## LOUISVILLE & N. R. CO. v. BOTTS.
### No. 13750.

United States Court of Appeals
Eighth Circuit.
March 14, 1949.

Wilton D. Chapman, of St. Louis, Mo., for appellant.

Roberts P. Elam, of St. Louis, Mo., for appellee.

Before SANBORN, WOODROUGH and JOHNSEN, Circuit Judges.

JOHNSEN, Circuit Judge.

A switchman, employed by the Louisville and Nashville Railroad Company, in its Radnor Yards, outside Nashville, Tennessee, lost a leg, when he slipped off a footboard on the front of a moving switch engine, as he was attempting to mount it, and fell onto the track. He brought suit under the Federal Employers' Liability Act, 45 U.S.C.A. § 51 et seq., for damages, charging a violation of the Boiler Inspection Act, 45 U.S.C.A. § 22 et seq. A jury found that the accident was due to a violation of the Boiler Inspection Act and returned a verdict for the employee. The Company has appealed.

Section 2 of the Boiler Inspection Act, 45 U.S.C.A. § 23, provides: "It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active

service of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions * * * of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for" (which the Interstate Commerce Commission is authorized to establish or approve).

The principal contention urged for reversal is that the evidence required the trial court to hold as a matter of law that there was no violation of the Boiler Inspection Act, and that it therefore was error to deny appellant's motion for a directed verdict.

The evidence showed that the footboard involved was fastened to some brackets, extending from the pilot beam of the locomotive, with oval-headed bolts, which were not countersunk in the wooden tread and whose top-points projected three-eighths of an inch above the surface. The heads were about the size of a twenty-five cent piece. The bolts were placed in the footboard when the switch engine had last been in the shops for repairs, but just how long this was before the accident occurred does not appear. The testimony described the heads as being "bright" and "shiny." The front bolts were located about 2½ inches from the edge of the footboard.

The switchmen did not have any specific engine in their work but used whichever one was assigned to their shift, when they came on duty each day. The last time appellee's crew had drawn this particular switch engine was a month or so before the accident.

The accident occurred about 11 p. m. The yard conditions at the point were dark. The engine had just completed the switching of a string of cars and was ready to move onto another track. It had backed some distance up the track, to enable appellee to set the necessary switch. After he had done this, appellee signaled the engineer to come ahead. As the engine approached, appellee gave a "steady" or slowing signal, so he might mount the footboard. The engine thereafter proceeded at a speed of 3 or 4 miles an hour. As it came to where he was standing, appellee with the use of his lantern was able to see the outline of the footboard but not its details. He lifted one foot onto the footboard, together with his weight, and as he did so the sole of his shoe came in contact with a smooth stationary object that felt about an inch in diameter. The object caused his shoe sole to slide or roll over its top in such a way as to make him lose his balance and topple him onto the track.

We cannot say, as a matter of law, that this footboard, as part of a locomotive used for night-switching in a dark yard, with its three-eighths-inch projections of bolt heads, on which a switchman might be caused to step in lifting his foot and weight, under permitted practice, onto the moving engine, was "in proper condition and safe to operate in the service to which * * * put, without unnecessary peril to to life or limb," if it was capable generally of producing accidents such as the one that occurred. Whether its condition was of that character was a question upon which we think reasonable men could differ in their judgment on the facts shown. And where "fair-minded men may honestly draw different conclusions from [the evidence], the question is not one of law, but of fact to be settled by the jury." Best v. District of Columbia, 291 U.S. 411, 415, 54 S.Ct. 487, 489, 78 L.Ed. 882. Cf. also Myers v. Reading Co., 331 U.S. 477, 484, 485, 67 S.Ct. 1334, 1338, 1339, 91 L.Ed. 1615, which recognized the right of a jury to determine, from the manner and results of the operation of a freight-car brake, whether it was an "efficient" hand brake within the requirement of section 2 of the Act of April 14, 1910, 45 U.S.C.A. § 11, of the Safety Appliance Acts.

In this connection, heed necessarily must be given to the unmistakable teaching of the Supreme Court in its recent decisions, that trial and appellate courts, both federal and state, on questions of liability under the Federal Employers' Liability Act, have been taking too narrow a view generally of the scope of permissive inference which is open to a jury on "probative facts." As one of the Justices has expressed it, in indicating the purpose of that Court's re-

peated overturning of decisions in such cases during the past few years (approximately 20 since 1943), "The historic role of the jury in performing that function * * * is being restored in this important class of cases." See concurring opinion of Mr. Justice Douglas in Wilkerson v. McCarthy, 69 S.Ct. 413, 422.

■ The opinions of the Supreme Court have declared that it is "the clear Congressional intent that, to the maximum extent proper, questions in actions arising under the Act should be left to the jury," Tiller v. Atlantic Coast Line R. Co., 318 U.S. 54, 68, 63 S.Ct. 444, 451, footnote 30, 87 L.Ed. 610, 143 A.L.R. 967; that such cases may not be taken from the jury merely because the question of liability is "close or doubtful," Bailey v. Central Vermont Ry., 319 U.S. 350, 354, 63 S.Ct. 1062, 1064, 87 L.Ed. 1444; that the jury has the right to make "all reasonably possible inferences" from such probative facts in the evidence as it chooses to accept, and "It is not the function of a court to search the record for conflicting circumstantial evidence in order to take the case away from the jury on a theory that the proof gives equal support to inconsistent and uncertain inferences," Tennant v. Peoria & P. U. Ry. Co., 321 U.S. 29, 32-35, 64 S.Ct. 409, 411, 412, 88 L.Ed. 520; that in any choice between possible inference "a measure of speculation and conjecture is required on the part of those whose duty it is to settle the dispute by choosing what seems to them to be the most reasonable inference," but "Only when there is a complete absence of probative facts to support the conclusion reached does reversible error appear," Lavender v. Kurn, 327 U.S. 645, 653, 66 S.Ct. 740, 744, 90 L.Ed. 916; and that the assumption that, on an issue of liability, "juries will invariably decide * * * against railroads" is "contrary to fact," and courts may not act on the theory that "juries will fall short of a fair performance of their constitutional function," but they must assume that a jury "finds facts only because they are proved," Wilkerson v. McCarthy, 69 S.Ct. 413, 417, 418.

■ On these decisions and the facts which were involved in them, we think the trial court clearly was entitled to allow the jury to decide whether the footboard, in the use to which the switch engine was put, was in proper condition and safe to operate without unnecessary peril to life or limb, and, if it was found not to be in such condition, whether the violation of the Boiler Inspection Act, which thereby would exist, was a proximate factor in causing appellee's injury.

But appellant argues that there can be no violation of the Boiler Inspection Act, unless some regulation or order of the Interstate Commerce Commission made under the Act has been violated. As to switch engine footboards, it appears that the Commission has established regulations governing the number, dimensions and location thereof, and the size and number of their hanger brackets, but, other than to provide that the tread of the footboard shall be "securely bolted" to the hangers, it has made no prescription on the kind of bolts to be used in the tread or the manner of their application. See 49 Code of Fed. Regulations § 131.16(a) (4).

The language of the Act affords no basis for the argument which appellant makes. It is to be noted that section 2, 45 U.S.C.A. § 23, provides that a carrier may not use a locomotive, "unless" it and all its parts are in proper condition and safe to operate, without unnecessary peril to life or limb, in the service to which the locomotive is put, "and unless" it has been subjected to the inspections provided for in the Act, "and" it meets such tests "as may be prescribed" in the rules or regulations of the Interstate Commerce Commission. (Italics ours.) The effect of this is to impose three conditions on a carrier's right to use a locomotive: (1) All parts of the locomotive must be safe to operate, without unnecessary peril to life or limb, in the service to which the locomotive is put; (2) the locomotive must have been submitted to the inspections provided for in the Act; and (3) the locomotive and its parts must meet such tests and conform to such standards as the Interstate Commerce Commission may have prescribed or approved.

■ These on their face are coordinate conditions and commands, and the clauses

therefore are not simply coincident. Thus, under the third clause, the Interstate Commerce Commission could hardly practicably be expected to lay down specifications on every individual item or element involved in the construction of the locomotive and its parts, but plainly Congress did not intend that any such nonprescription by the Commission should operate to relieve a carrier of its absolute obligation under the first clause, not to use any locomotive that is unsafe to operate, without unnecessary peril to life or limb, in the service to which it is put. The mere fact therefore that the third clause of the section of the statute has not been violated does ·not permit of a judicial ruling that there consequently in the present situation has been no violation of the first clause.

Other cases have held to the same effect. Thus, in Baltimore & O. R. Co. v. Groeger, 6 Cir., 288 F. 321, 324, reversed on other grounds, 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419, the court said: "While the Interstate Commerce Commission is authorized to make rules and orders in furtherance of the enforcement of this law, nevertheless its failure to make a rule or an order covering every defective condition or construction within the meaning of section 2 of the Boiler Inspection Act by no means relieves the carrier from complying with the provisions of that section." The same view was taken in Satterlee v. St. Louis-S. F. Ry. Co., 336 Mo. 943, 82 S.W. 2d 69, 74. Again, in Lilly v. Grand Trunk Western R. Co., 317 U.S. 481, 486, 489, 63 S.Ct. 347, 351, 352, 87 L.Ed. 411, the Supreme Court indicated that, even without a rule of the Interstate Commerce Commission requiring the top of a tender to be kept clean, such as existed in that case, "The use of a tender, upon whose top an employee must go in the course of his duties, which is covered with ice seems to us to involve 'unnecessary peril to life or limb'—enough so as to permit a jury to find that the Boiler Inspection Act has been violated." And previously, Great Northern Ry. Co. v. Donaldson, 246 U.S. 121, 128, 38 S.Ct. 230, 233, 62 L.Ed 616, Ann.Cas.1918C, 581, had made clear the similar non-dependence of the first and second commands of section 2 of the Boiler Inspection Act, in declaring that there was no basis under the statute to contend that "there is no liability for an unsafe locomotive, * * * because some particular feature of construction, which has been found unsafe, has not been disapproved by the federal boiler inspector."

Appellant's next contention is that it was error to have instructed the jury that the pleadings admitted that appellant and appellee were both engaged in interstate commerce at the time of the accident, and that that question therefore did not constitute a jury issue. The complaint had alleged that the parties were so engaged. Appellee's answer made no direct denial of this allegation but said: "Defendant admits that while plaintiff was in the employ of the defendant at times defendant was engaged in interstate commerce and interstate transportation as a common carrier by railroad and avers that at times it and the plaintiff were engaged in intrastate transportation."

Rule 8(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires that "Denials shall fairly meet the substance of the averments denied." Subsection (d) of the Rule provides that "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."

Ordinary reading of appellant's answer would not suggest that it was intending to dispute that the accident had occurred in interstate commerce. ·And nothing on the trial itself purported to make this a lurking question. Neither in its opening statement, its evidence, its motion for a directed verdict, nor in its argument to the jury did appellant in any way indicate that it was attempting to rely on such a defense. Only after all the arguments to the jury had been made and the court had given its instructions, did appellant seek to inject the question. It purported to do so by stating that it excepted to the court's previous denial of the motion for a directed verdict, made at the close of the evidence, for the reason, among others, that there was "no evidence of the fact that plaintiff and defendant

at the time were under the Acts (Federal Employers' Liability Act and Boiler Inspection Act)." The motion itself, however, had not set out that ground, and appellant could not thereafter agglutinate it into the motion and ruling by the mere process of a subsequent exception. But beyond all this, appellants attack here is on the instruction which the court gave the jury, whereas it had made no objection or exception to the instruction itself, as required by the provisions of Rule 51 of the Federal Rules of Civil Procedure that "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection."

On each of these considerations, there is no merit in appellant's contention, as a basis for reversal.

It is next contended that it was error to set out in the instructions the several elements of damage which the jury could consider, in the form of separate, numbered paragraphs. These elements, under the evidence, were the nature and extent of the injuries appellant received; the pain and suffering caused by them; the pain and suffering which they would cause in the future; the loss of earnings which they had occasioned; and the loss of earnings which they would occasion in the future. It is not claimed that the charge on damages was in any way substantively incorrect, but appellant's objection, as stated in the exception taken, is that, in numbering the damage elements and in using a separate paragraph for each, the court "unduly emphasized and accentuated" them and tended to "pyramid" any recovery which the jury might allow.

■ There is no rule of law that forbids a numbering in the court's charge of the elements of damage, in order to make them clear to a jury. And whether the elements of damage shall be stated in separate paragraphs or in a single one is also a matter for the trial court's discretion. Form in instructions is not substance abstractly for a reversal. It will command appellate consideration only

where it is possible to convince, in the entire setting of the particular case and in relation to the objections made when the instructions were given, that it has prejudicially operated to throw the issues out of, or not bring them into, a fair and intelligible focus. No such conviction is produced in the present situation. Thus, for one thing, even with the damage elements being set out in separate, numbered paragraphs, of which appellant complains, all the instructions given on damages cover only half of a page, out of the total 6½ pages in the printed record, which the court's charge occupies, so that the question of damages can hardly relatively be said to have been formally overemphasized.

■ Appellant's final contention is that it was error to refuse to give the following tendered instruction: "The Court instructs the jury that if you find for the plaintiff under the other instructions herein, in arriving at the amount of your verdict, you should take into consideration the fact that all persons do not live to the age of expectancy, that this is true particularly in the case of hazardous occupations, that they may not work all the years of their life, and that their earnings may not remain stationary, but may vary, diminish or cease in the future, from causes in no way involved in the issues in this case."

Thompson v. Camp, 6 Cir., 163 F.2d 396, 403, is relied on in support of appellant's contention. That case was a death action by an administrator for the benefit of a deceased employee's widow and minor children. An instruction was requested substantially similar to that which appellant tendered here, but containing a further clause that "the jury should not include any amount as contributions which the children would have received after they attained the age of twenty-one, since it is not presumed that they would receive any pecuniary benefits from the deceased thereafter."

As we read the opinion, it was this last clause which impelled the court to reverse for failure to give the requested instruction. The court said: "In the absence of evidence that an adult child is either dependent upon or had any reasonable

ground for expecting any pecuniary benefit from a continuance of the decedent's life, a recovery on behalf of such child is excluded. * * * The evidence (as to what an annuity equal to the decedent's salary would have cost) was based on the assumption that part of his salary was used for the support of the children. In view of this background, we believe it was prejudicial error not to give the requested instruction. The evidence and the lump sum verdict provide no criterion for segregation of the recovery into different parts which would permit that a remittitur be ordered for the purpose of correcting the error." 163 F.2d at pages 403 and 404.

We think the giving or refusing of the tendered instruction was in the present situation a matter wholly for the trial court's discretion. That all persons do not live to the age of normal expectancy, especially in hazardous occupations, and that they may not work all their lives, or their earnings may otherwise terminate or diminish, are such commonplace facts, of daily consciousness, that they do not need to be made a matter of judicial fiat. If appellant believed that some reminder of them was necessary, they clearly were sufficiently emphasizable, for this purpose, in argument to the jury, as appellant in fact did.

What we have said sufficiently disposes of all of appellant's arguments and contentions. Though not specifically made one of its points to be argued, appellant has urged, at several places in its brief, that the verdict is excessive. The amount of the verdict was $30,000. The amount of the verdict in a tort action is, of course, not reviewable by a federal appellate court—at any rate not except as a matter of correcting an absolutely plain injustice, in the interest of judicial administration itself. Fairmount Glass Works v. Cub Fork Coal Co., 287 U.S. 474, 485, 53 S.Ct. 252, 77 L.Ed. 439; Kroger Grocery & Baking Co. v. Yount, 8 Cir., 66 F.2d 700, 705, 92 A.L.R. 1166; Chicago & N. W. Ry. Co. v. Kelly, 8 Cir., 74 F.2d 31, 37; Chicago & N. W. Ry. Co. v. Green, 8 Cir., 164 F.2d 55, 64.

Affirmed.