Kenneth A. HEROLD and Janet
Herold, Appellees,

v.

BURLINGTON NORTHERN, INC., a
foreign corporation, Appellant.

Kenneth A. HEROLD and Janet
Herold, Appellants,

v.

BURLINGTON NORTHERN, INC., a
foreign corporation, Appellee.

Nos. 84–2094, 84–2115.

United States Court of Appeals,
Eighth Circuit.

Submitted Jan. 16, 1985.

Decided May 2, 1985.

Rehearing and Rehearing En Banc
Denied June 6, 1985.

Frank Magill, Fargo, N.D., for appellant.

John C. Hoyt, Great Falls, Mont., for appellees.

Before LAY, Chief Judge, and JOHN R. GIBSON and FAGG, Circuit Judges.

LAY, Chief Judge.

Kenneth and Janet Herold were injured when a Burlington Northern train hit their cattle truck as they crossed the railroad tracks adjacent to the Schnell Livestock Auction Market outside Dickinson, North Dakota on the afternoon of November 21, 1974. Kenneth Herold was driving the truck. He was rendered a spastic quadriplegic and suffered brain damage. His wife, Janet, also was seriously injured; breaking her collar bone, injuring her back, and suffering a concussion along with cuts and bruises over the body.

Suit was filed in September 1980, seeking damages for injuries, loss of income, Janet's loss of consortium, and punitive damages. The jury returned a verdict for the Herolds against the railroad. The jury found Burlington Northern eighty percent negligent and Kenneth twenty percent negligent. Kenneth was awarded $9,425,000 for his injuries and losses. Janet was awarded $250,000 for her injuries and $2,000,000 for loss of consortium. The court, the Honorable Bruce M. Van Sickle, dismissed plaintiffs' claim for punitive damages. Kenneth's award and Janet's loss of consortium award were reduced by twenty percent.

Burlington Northern moved for judgment notwithstanding the verdict or a new trial. The motions were denied except as to Janet's consortium award. The district court ordered a new trial on the issue of damages for loss of consortium unless Janet would accept remittitur to $300,000. She refused and a new trial is pending for Janet's claim.

On appeal, the railroad presents four issues: (1) whether judgment notwithstanding the verdict should have been entered for the railroad either because the Herolds' failure to stop at the crossing was the proximate cause of the accident or Kenneth's negligence was at least equal to the railroad's negligence; (2) whether it was proper for the district court to treat an amber rotating beacon as an "appurtenance" under the Boiler Inspection Act; (3) whether it was proper for the district court to admit evidence regarding automatic crossing signal systems; and (4) whether the verdicts were excessive. The Herolds cross-appealed on three issues: (1) whether the claim for punitive damages should have been dismissed; (2) whether Janet's loss of consortium award should be reduced by the percentage of negligence assigned to Kenneth; and (3) whether it was proper for the district court to set aside the verdict and order a new trial on the issue of damages for Janet's loss of consortium.

Because we find the jury's verdicts for Kenneth and Janet's injuries are supported by substantial evidence their judgments will be affirmed. We find the district court erred in reducing Janet's loss of consortium claim by the percentage of negligence assigned to Kenneth. On Janet's claim for loss of consortium damages we find the district court's order for a new trial is interlocutory and not appealable at this time.

## I. The Comparative Negligence of the Railroad and Kenneth Herold

The railroad crossing had no electronic signals. Traffic was warned only by a faded stop sign affixed to a cross-buck. No engineering study had been done by the

railroad regarding effective placement of the stop sign. There was evidence that it was placed at a point where it would be ineffective to warn motorists. Besides being in a state of disrepair, the evidence showed that the stop sign was erected by Burlington Northern without authority from the North Dakota Public Service Commission. This action prevented consideration of automatic signal systems as an alternative. There was strong evidence, although disputed, that the train failed to sound its horn. The accident occurred during daylight on a clear, late fall afternoon. The locomotive's headlight was on, but an amber rotating beacon had been removed for repairs. Kenneth was driving at about ten miles per hour and did not stop before crossing the tracks. The Herolds were leaving a very busy stockyard after delivering cattle. There was evidence the crossing was extra hazardous. In overruling the railroad's motion for judgment notwithstanding the verdict, the district court provides a graphic description of the conditions existing at the time of the unfortunate collision:

> The railroad knew of the disorganized traffic flow, and the converging street system of the Schnell crossing * * *. [C]onsidering the time of day, the size of the sale, and the fact that the sale yard contained parked vehicles, loading and unloading vehicles, crisscrossing men, women and children on foot * * * plus the impediments to a clear view of the track at all times, and the existence of approach streets on both sides of the railroad track * * * I cannot say no reasonable jury would have found the defendant less than 50% at fault for the accident.

The crew in the locomotive observed the truck approaching the crossing and, when it became apparent the truck would not stop, applied the train's brakes. The train was traveling over forty-three miles per hour and was not able to stop in time to avoid the collision. Under the existing circumstances—the traffic congestion, the pedestrian activity, the obstructed intersection, the complex conjunction of the road

and the crossing, the dark color of the train—the jury reasonably could have found the train was traveling at an excessive speed.

 There was conflicting evidence sufficient to go to the jury as to the alleged failure of the railroad to use its bell or whistle or otherwise to provide adequate warning. Burlington Northern contends the accident was caused by Kenneth's failure to stop at the crossing, hear the locomotive's whistle, or observe the approaching train. Since the Herolds prevailed, we must view the evidence in the light most favorable to them. The jury was properly instructed on proximate cause and defendant made no objection. While the jury found that Kenneth shared some of the negligence, it determined his actions were not the intervening or superceding cause of the collision.

 There exists evidence that the Herolds had never seen a train at the Schnell crossing before the accident. There was ample evidence that the road on which the Herolds were traveling was not well-defined and does not approach the railroad track at a right angle. The many distractions at the heavily congested crossing mitigate the Herolds' failure to see the train. Under such circumstances the doctrine that requires a motorist to "see that which is in plain sight" loses its force as a matter of law and the issue becomes one of fact for the trier of fact. The district court mentioned the various impediments to a clear view. We find ample evidence of the maintenance of an extra hazardous crossing by the railroad.

 However, Burlington Northern also argues, even if it was negligent, Kenneth Herold was at least equally negligent and, under North Dakota comparative negligence law, the Herolds' recovery should be barred. Both the jury and the district court disagreed. There exists substantial evidence of Burlington Northern's negligence. The evidence of Kenneth Herold's negligence was his failure to stop or to observe the approaching train. As the dis-

trict court points out "the jury could reasonably conclude from the slow speed of the truck that Kenneth was also looking." The jury's apportionment of negligence was not unreasonable. In light of the conflicting evidence we must give great credence to the findings of the jury and the trial judge. They heard the testimony and reviewed the evidence first hand; many credibility findings must be made in a trial such as this. Appellate courts should be extremely reluctant to interfere with a verdict where twelve jurors sit through a long trial and an experienced and competent trial judge finds no error in the jury's determination. Viewing the evidence in the light most favorable to the prevailing party, the jury verdict had substantial support and the district court was correct in denying Burlington Northern's post-trial motions.

## II. The Amber Rotating Beacon

The Federal Railroad Administration required only a headlight and whistle on locomotives. 49 C.F.R. §§ 230.231(a), .234 (1974). However, Burlington Northern equipped its locomotives with amber rotating beacons, attached to the headlight system, at the factory. The railroad argues that federal law pre-empts the field of railroad safety and defines the standard of care. Because amber rotating beacons are not federally mandated, Burlington Northern contends it was improper for the district court to allow any evidence regarding the beacon. At the time of the Herolds' accident, the beacon had been removed from the locomotive for repairs. The railroad relies primarily on *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149 (9th Cir.1983). In *Marshall*, the Ninth Circuit held:

[U]nder the Boiler Inspection Act [45 U.S.C. § 23] the state may not impose liability for failure to install a part or attachment of a locomotive if it is "within the scope of the authority delegated to the [Secretary]" to prescribe the same part or attachment. *Napier v. Atlantic Coast Line R.R.*, 272 U.S. [605] at 611, 47 S.Ct. [207] at 209 [71 L.Ed. 432].

*Marshall*, 720 F.2d at 1152.

■ The *Marshall* decision would be persuasive if the Herolds were arguing that the railroad should have installed a beacon on the locomotive and the evidence was introduced for the purpose of showing the locomotive could be made more safe. However, in this case, unlike *Marshall*, there is no issue whether Burlington Northern can be required to install additional warning lights. *See Marshall*, 720 F.2d at 1152. *C.f. Green v. River Terminal Railway*, 585 F.Supp. 1019, 1026–28 (N.D.Ohio 1984). Burlington Northern had already made the decision to use a beacon and had, in fact, installed one on the locomotive involved in this collision. The district court ruled the beacon was an "appurtenance" of the locomotive within the meaning of the Boiler Inspection Act, 45 U.S.C. § 23.[1] The Act "imposes upon the carrier an absolute and continuing duty to maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service without unnecessary peril to life or limb." *Southern Railway Co. v. Lunsford*, 297 U.S. 398, 401, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936). The beacon was not operating at the time of the collision; it was in the shop being repaired. The court instructed the jury that the beacon was an appurtenance and gave the jury the relevant language of 45 U.S.C. § 23.

The railroad argues that if there was not a duty to install the beacon in the first

---

1. **§ 23. Use of unsafe locomotives and appurtenances unlawful; inspection and tests**
 It shall be unlawful for any carrier to use or permit to be used on its line any locomotive unless said locomotive, its boiler, tender, and all parts and appurtenances thereof are in proper condition and safe to operate in the service to which the same are put, that the same may be employed in the active service

of such carrier without unnecessary peril to life or limb, and unless said locomotive, its boiler, tender, and all parts and appurtenances thereof have been inspected from time to time in accordance with the provisions of sections 28 to 30 and 32 of this title and are able to withstand such test or tests as may be prescribed in the rules and regulations hereinafter provided for.

place, there can be no violation of a duty to keep the light in repair. The railroad's theory is that Congress has pre-empted the field of railroad safety and federal law imposes no duty to install warning devices beyond a headlight and whistle. It is true that the state, through statute or common law, may not require the railroad to install and maintain amber beacons. However, once any part or appurtenance is attached to a locomotive, the Boiler Inspection Act requires it be maintained in good repair at all times. 45 U.S.C. § 23. The argument that there can be no violation of the Act absent a violation of some regulation or order of the Interstate Commerce Commission or Federal Railroad Administration is without merit.[2] This court has previously rejected that limitation:

> While the Interstate Commerce Commission is authorized to make rules and orders in furtherance of the enforcement of this law, nevertheless its failure to make a rule or an order covering every defective condition or construction within the meaning of section 2 of the Boiler Inspection Act by no means relieves the carrier from complying with the provisions of that section.

*Louisville & Nashville Railroad v. Botts,* 173 F.2d 164, 167 (8th Cir.1949) *quoting Baltimore & Ohio Railroad v. Groeger,* 288 F. 321, 324 (6th Cir.1923), *rev'd on other grounds,* 266 U.S. 521, 45 S.Ct. 169, 69 L.Ed. 419 (1925). *See also St. Louis Southwestern Railway v. Williams,* 397 F.2d 147, 149–51 (5th Cir.1968); *Calabritto v. New York, New Haven & Hartfort Railroad,* 287 F.2d 394, 395–96, 397 (2d Cir.), *cert. denied,* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961). If the amber beacon voluntarily installed by Burlington Northern is a part or appurtenance of the locomotive, then failure to maintain it in good

operating condition is a violation of the Boiler Inspection Act.

██ The Act "is to be liberally construed in the light of its prime purpose, the protection of employees and others by requiring the use of safe equipment." *Lilly v. Grand Trunk Western Railroad,* 317 U.S. 481, 486, 63 S.Ct. 347, 351, 87 L.Ed. 411 (1943). Something can be an appurtenance for the purpose of the Act even though it is not required by federal regulation. In *Southern Railway v. Lunsford,* 297 U.S. 398, 56 S.Ct. 504, 80 L.Ed. 740 (1936), the Supreme Court considered a device for avoiding derailments which was not regulated by the ICC. The Court held it was not an appurtenance; not because the device was not required by the ICC but rather because the device was experimental. *Id.* at 402, 56 S.Ct. at 506. The Court noted: "Whatever in fact is an integral or essential part of a completed locomotive, *and* all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission, are within the statute." *Id.* (emphasis added). In contrast, there was an ICC rule in *Lilly* which required the top part of the locomotive be kept clean and dry. The jury had found the railroad liable under the Act because ice had accumulated on the area and caused an employee to slip and fall. The Supreme Court found the ICC rule helpful but unnecessary: "[T]he rule only fortifies a result which we think the jury could probably have reached even in the absence of such a rule." 317 U.S. at 489, 63 S.Ct. at 352. *See Whelan v. Penn Central Co.,* 503 F.2d 886, 890 (2d Cir.1974).

A wide variety of items on locomotives have been found to be within the Act. *Urie v. Thompson,* 337 U.S. 163, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (track sanders;

---

**2.** The requirement of safe equipment is set by the [Boiler Inspection Act], not by [Interstate Commerce Commission] rule. While the Commission has the power to give more definite content to this standard in specific instances by rules, the failure of the Commission so to act does not relieve a carrier of its obligation to meet the statutory requirement of safe equipment as it may be reasonably

interpreted by a jury. * * * It would be indeed an anomaly to require enforcement of a Congressional mandate for safe railroad equipment to depend upon the action or non-action of an administrative agency.

*Calabritto v. New York, New Haven & Hartford Railroad,* 287 F.2d 394, 396 (2d Cir.), *cert. denied,* 366 U.S. 928, 81 S.Ct. 1649, 6 L.Ed.2d 387 (1961) (footnotes omitted).

no ICC rule implicated); *Tiller v. Atlantic Coast Line Railroad,* 323 U.S. 574, 65 S.Ct. 421, 89 L.Ed. 465 (1945) (headlight; required by ICC); *Lilly,* 317 U.S. 481, 63 S.Ct. 347 (boiler spout; ICC rule implicated); *Whelan,* 503 F.2d 886 (rear step; no ICC rule implicated); *Chicago, Rock Island & Pacific Railroad v. Speth,* 404 F.2d 291 (8th Cir.1968) (warning torpedoes; no ICC rule implicated); *Williams,* 397 F.2d 147 (front step; no ICC rule implicated); *Southern Railway v. Bryan,* 375 F.2d 155 (5th Cir.), *cert. denied,* 389 U.S. 827, 88 S.Ct. 82, 19 L.Ed.2d 83 (1967) (lifting eye; no ICC rule implicated); *Holfester v. Long Island Railroad,* 360 F.2d 369 (2d Cir.1966) (fuse box; no ICC rule implicated); *Fritts v. Toledo Terminal Railroad,* 293 F.2d 361 (6th Cir.1961) (fireman's seat; no ICC rule implicated); *Calabritto,* 287 F.2d 394 (locomotive platform; no ICC rule implicated); *Heiselmoyer v. Pennsylvania Railroad,* 243 F.2d 773 (3d Cir.), *cert. denied,* 355 U.S. 833, 78 S.Ct. 47, 2 L.Ed.2d 44 (1957) (engineer's seat; no ICC rule implicated); *Botts,* 173 F.2d 164 (foot board; no ICC rule implicated); *Bolan v. Lehigh Valley Railroad,* 167 F.2d 934 (2d Cir.1948) (pilot step; compliance with ICC rule held not to preclude liability); *Hines v. Smith,* 275 F. 766 (7th Cir.1921) (automatic bell ringer; no ICC rule implicated); *Green v. River Terminal Railway,* 585 F.Supp. 1019 (N.D. Ohio 1984) (radio; no ICC rule implicated); *Zollinger v. Pittsburgh & Lake Erie Railroad,* 337 F.Supp. 913 (W.D.Pa.1972) (pushpole; no ICC rule implicated); *Seaboard Coast Line Railroad v. Jackson,* 256 So.2d 568 (Fla.1971), *cert. denied,* 409 U.S. 1001, 93 S.Ct. 324, 34 L.Ed.2d 262 (1972) (radio; no ICC rule implicated). We find the district court was correct in ruling that the amber beacon was an appurtenance within the meaning of the Boiler Inspection Act.

The evidence at trial showed that amber rotating beacons could be effective safety devices[3] and that the beacon on the locomotive involved in the collision had broken and been removed for repairs. The jury could have reasonably concluded the beacon was not "in proper condition and safe to operate," in violation of 45 U.S.C. § 23, and that this violation contributed to the collision. We find no error in admitting evidence regarding the beacon.[4]

## III. Automatic Signals

Burlington Northern complains about the introduction of testimony regarding automatic crossing signals. It is clear, under state law, the railroad had no duty to install automatic signals. *South v. National Railroad Passenger Corp. (AMTRAK),* 290 N.W.2d 819, 827 (N.D.1980). However, Burlington Northern contends the jury was given the impression that the railroad had some obligation to install such signals. The argument carries little weight because the railroad admits the jury was properly instructed. The instructions explicitly stated the railroad had no duty to install anything other than a crossbuck, that only the state could authorize additional warning devices, and that the jury could not find defendant negligent for failing to modify or close the crossing. There were no conflicting or ambiguous instructions which might support a conclusion that the jury was confused or misled.

3. Burlington Northern's Yellowstone Division Superintendent John R. Reynolds testified: "The amber rotating beacon, I believe, is rapidly becoming the standard for all railroads. I can say that the top three railroads in crossing safety have all adopted the amber rotating beacon, and that's the Union Pacific, the Santa Fe and the Burlington."

4. The jury was also instructed under Restatement (Second) of Torts § 324A (1965) on the common law duty of one who voluntarily renders services. Apparently plaintiffs contended that once Burlington Northern equipped its locomotive with an amber rotating beacon, it had a common law duty, defined by § 324A, to maintain that beacon in good working condition. This is essentially the same duty imposed by the Boiler Inspection Act and we fail to see the applicability of § 324A, particularly since it speaks of rendering "services." In any case, Burlington Northern does not contend on appeal that the § 324A instruction was improper. Instead, defendant argued the pre-emptive effect of federal law completely precluded introduction of evidence regarding the beacon.

■ The evidence was material and relevant in light of Burlington Northern's contention that the crossing was not extra hazardous and that the Herolds were negligent. The testimony concerning automatic lights occurred in the context of expert testimony regarding the danger and confusion inherent in the crossing at issue. The evidence was also properly admitted to show Burlington Northern was negligent when it placed a stop sign at the crossing without authorization and without performing any engineering studies. The expert gave his opinion that the crossing was extra hazardous and a proper engineering study would have concluded automatic signals, rather than a stop sign, should be installed. The expert also testified that the presence of a dilapidated stop sign, rather than automatic signals, could have led plaintiffs to believe the crossing was seldom used and not dangerous. His testimony regarding the exact placement of automatic flashers was in support of his contention that the intersection made complex demands on approaching drivers such as Kenneth Herold. The district court did not abuse its discretion in admitting this evidence.

## IV. Excessive Verdicts

■ The awards to Kenneth Herold for injuries and losses, and to Janet Herold for injuries, were substantial. The railroad asks this court to conclude they are excessive as a matter of law. When a verdict is so excessive it shocks the conscience of this court, it will be set aside. *Drotzmanns, Inc. v. McGraw-Hill, Inc.,* 500 F.2d 830, 835 (8th Cir.1974). However, excessiveness of a verdict is basically a matter for the trial court. *Solomon Dehydrating Co. v. Guyton,* 294 F.2d 439, 447–48 (8th Cir.), *cert. denied,* 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961). In this case the district court carefully reviewed the verdicts in response to the railroad's motions for judgment notwithstanding the verdict or a new trial. The court found the amounts were "not contrary to the great weight of the evidence" and "a reasonably responsible jury could have found the verdict within

the framework of the correct law and the admissible evidence * * *."

■ The assessment of damages lies within the sound discretion of the jury. *Vanskike v. Union Pacific Railroad,* 725 F.2d 1146, 1150 (8th Cir.1984). Defendant argues that juries in similar cases have awarded significantly lower amounts. But comparisons are not particularly helpful. Each case must be evaluated on its own merits. *Scoville v. Missouri Pacific Railroad,* 458 F.2d 639, 648 (8th Cir.1972).

■ As the district court observed, and the railroad concedes, the injuries sustained by Kenneth Herold were devastating. According to the court "we have a reflective, perceptive, interpretive man trapped in a [sic] ungovernable, unusable body, with no meaningful ability to escape, even through communication." The court also found Janet suffered "substantial injury." Given the facts of this case and the district court's thorough review of the verdict, we cannot say the damages awarded shock the conscience of the court. To be sure, the sums are considerable, but so were the injuries and losses.

## V. Punitive damages

■ On their cross-appeal, plaintiffs argue the district court erred in refusing to submit the issue of punitive damages to the jury. Under North Dakota law, punitive damages may be recovered when the tortfeasor's conduct has been oppressive, fraudulent or malicious. N.D.Cent.Code § 32–03–07 (1976). *Cf. Brown v. Missouri Pacific Railroad,* 703 F.2d 1050 (8th Cir. 1983). There was no evidence showing actual malice, fraud or oppression on the part of Burlington Northern. The Herolds argue, however, that the various negligent acts of the railroad which the evidence supports, add up to recklessness. Malice can be presumed from recklessness. *Dahlen v. Landis,* 314 N.W.2d 63, 69 (N.D. 1981).

■ We agree with the district court decision to dismiss the claim for punitive

damages. Even when all the evidence is viewed in the light most favorable to the Herolds, it simply is not sufficient to sustain a verdict for punitive damages. The Herolds did not have the right of way at the crossing. While the evidence can support a finding of negligence on the part of the railroad, it cannot reasonably lead to an inference of malice or oppressive conduct. In fact, the acts of putting up a stop sign—even though unauthorized—and ordering the locomotive equipped with an amber rotating beacon are evidence of Burlington Northern's concern for safety. We find no error.

## VI. Loss of Consortium

### A. Reduction by Kenneth's Negligence

■■■ Plaintiffs contend the district court erred when it ordered that any recovery by Janet for loss of consortium must be reduced by the percentage of Kenneth's negligence. Although this court generally defers to the district court's interpretation of local law, in this case we believe the district court was incorrect. Under North Dakota law it is clear that a wife's claim for loss of consortium is an independent right, not contingent upon the rights or liabilities of her husband. *Hastings v. James River Aerie No. 2337*, 246 N.W.2d 747, 751–52 (N.D.1976). Furthermore, the negligence of a driver cannot be imputed to his passenger. *Mertz v. Weibe*, 180 N.W.2d 664, 669–70 (N.D.1970). Also, the North Dakota contributory negligence statute provides that recovery for injury shall be reduced only "in proportion to the amount of negligence attributable to *the person recovering.*" N.D.Cent.Code § 9–10–07 (1975) (emphasis added). While there is no North Dakota caselaw directly on point, we believe the Supreme Court of North Dakota would not allow a loss of consortium award to be reduced by the other spouse's negligence. The contrary cases cited by the defendant are from states which consider loss of consortium claims to be derivative actions. *See e.g., White v. Lunder*, 66 Wis.2d 563, 225

N.W.2d 442 (1975); *Hamm v. City of Milton*, 358 So.2d 121 (Fla.Dist.Ct.App.1978).

### B. Order for New Trial

The district court has ordered a new trial on the amount of damages for Janet's loss of consortium. Janet refused remittitur. The court held the award of two million dollars was "contrary to the great weight of the evidence." The court also determined the jury had been swayed by consideration of the Herold's two children, conceived and born after the accident.

■■■ An order granting a new trial after the refusal to accept a remittitur is an interlocutory order and not ordinarily appealable. *Central Microfilm Service v. Basic/Four Corp.*, 688 F.2d 1206, 1211 (8th Cir.1982), *cert. denied*, 459 U.S. 1204, 103 S.Ct. 1191, 75 L.Ed.2d 436 (1983). The narrow exception, which plaintiffs claim is applicable here, arises when the district court enters the order without jurisdiction. According to plaintiffs, the court violated Fed.R.Civ.P. 59 by ordering the new trial, more than ten days after judgment, on a ground not raised by defendant, without notice to the parties or the opportunity to be heard.

■■■ In its motion for judgment notwithstanding the verdict or a new trial, Burlington Northern asserted the loss of consortium award was "grossly excessive and unreasonable under the evidence * *." In its order, the district court held "there is no basis on which the jury could have found that verdict within the framework of the correct law and admissable [sic] evidence." Burlington Northern had argued the excessive verdict resulted from passion and prejudice. The district court ruled that the jury had been swayed by "the drama and the emotional impact of the childrens' conception, birth, care and development under circumstances of a spastic, non-communicating, occasionally violent spouse-father * * *." The district court ordered a new trial on grounds raised by defendant and did not violate Fed.R.Civ.P. 59. We conclude that the order for a new trial was

interlocutory and is not appealable at this time.

The judgment of the district court is affirmed.