JUSTICE TRIEWEILER
specially concurring and dissenting.
¶147 I concur with the majority’s resolution of Issues numbered 1,2, 3, and 8. I agree with the majority’s decision not to address Issues numbered 4,6, and 7.1 specially concur with the majority’s resolution of Issue No. 5; and I dissent from the majority’s disposition of Issue No. 9.
¶148 I concur with the majority’s conclusion in part 5 of its opinion that the District Court erred by excluding evidence that the locomotive’s lighting configuration was inadequate to make it “plainly visible.” However, I disagree with and, therefore, dissent from the majority’s conclusion that this case is distinguishable from Herold v. Burlington Northern, Inc. (8th Cir. 1985), 761 F.2d 1241, simply because the allegation in this case was that the amber rotating beacon was “ineffective,” whereas in Herold the plaintiffs complained that a beacon, which had been installed but then removed, was not in “good operating condition.” That distinction, in my opinion, makes no difference to the court’s holding in Herold. In Herold, the plaintiffs were also struck at a railroad crossing. The court noted that Burlington Northern equipped its locomotives with amber rotating beacons even though it was not required to do so by federal law. Plaintiffs were allowed to prove in the district court that the amber rotating beacon had been removed for repairs. On appeal, the railroad contended that because it was not required to install an amber rotating beacon, it was error for the district court to allow evidence that it had been removed.
¶ 149 The Eighth Circuit Court of Appeals disagreed and observed:
[T]here is no issue whether Burlington Northern can be required to install additional warning lights. Burlington Northern had already made the decision to use a beacon and had, in fact, installed one on the locomotive involved in this collision. The district court ruled the beacon was an “appurtenance” of the locomotive within the meaning of the Boiler Inspection Act, 45 U.S.C. § 23. The Act “imposes upon the carrier an absolute and continuing duty to *387 maintain the locomotive, and all parts and appurtenances thereof, in proper condition, and safe to operate in active service without unnecessary peril to life or limb. Southern Railway. Co. v. Lunsford, 297 U.S. 398, 401, 56 S. Ct. 504, 506, 80 L. Ed. 740 (1936).
Herold, 761 F.2d at 1245 (citations omitted). In other words, the Eighth Circuit did not distinguish between an “appurtenance” which was “ineffective” and one which was simply not in “good operating condition” as the majority does. The Eighth Circuit simply held that once an appurtenance is installed on a locomotive, the Boiler Inspection Act requires that it be maintained in a manner that it does not cause “unnecessary peril to life or limb.”
¶ 150 In this case the Plaintiffs alleged that the amber rotating light was not maintained in such a way as to avoid unnecessary peril to life or limb because of its placement. I see no practical difference between the allegation in this case and the allegation in Herold that a light which was not required in the first place had been removed.
¶151 For these reasons, I dissent from the majority’s conclusion that Herold is not applicable. Furthermore, I disagree with the majority’s statement in ¶.88 of its opinion that, “ ... we disagree with the Mickelsons that alternative placement of the lighting has any relevance to whether the train was “plainly visible” to Jim on the night of the accident,....” That statement is inconsistent with the majority’s conclusion in ¶ 96 that the District Court erred by precluding Mickelsons from refuting MRL’s contention that the train was “plainly visible” in part because of the presence of a rotating yellow light. The only way to rebut the railroad’s contention was to prove that the rotating yellow light contributed nothing to the train’s conspicuity because of its placement. I do believe that the majority’s ultimate conclusion is correct, but that the unnecessary and incorrect language in ¶ 88 will be confusing to the parties and possibly the District Court.
¶152 I also dissent from the majority’s conclusion that the consortium claims of Vickie and Jim’s children are barred if Jim was 50 percent or more negligent. That conclusion is totally inconsistent with the majority’s first conclusion that the claims are not reduced by Jim’s contributory negligence based on the language of the contributory negligence statute found at § 27-1-702, MCA.
¶ 153 It makes no difference whether the consortium claims are derivative or independent, and it makes no difference whether other *388 courts have held that a loss of consortium claim should be reduced by a spouse’s or parent’s negligence. In Montana, the language of the contributory negligence statute is dispositive. It simply provides that “damages allowed must be diminished in proportion to the percentage of fault attributable to the person recovering.” Section 27-1-702, MCA (emphasis added.) In this case, the persons recovering damages for loss of consortium are Vickie and Jim’s children. Both parties concede that they were not in any way at fault for Jim’s injuries. Therefore, based on the plain language of § 27-1-702, MCA, their recovery, if any, cannot be diminished based on contributory fault.
¶154 The majority avoids the application of the plain language of the statute by creating an artificial distinction where none has previously existed. It concludes out of whole cloth that the consortium claims are independent as to damages but derivative as to liability. In doing so, the majority picks and chooses that part of the contributory negligence statute that it chooses to apply. It concludes that if Jim was not more than 50 percent at fault there can be no reduction but that if Jim was more than 50 percent at fault there can be no recovery. There is no basis in the plain language of the statute for making this artificial distinction. Courts may not rewrite statutes to achieve what the majority of the court considers a more satisfactory result. See § 1-2-101, MCA.
¶155 The majority’s response is that if we apply the plain language of § 27-1-702, MCA, there would be “an anomaly in the area of tort law.” Because the majority concludes the legislature could not have intended to do that which it plainly did, the majority has simply rewritten the statute to its satisfaction. I would not do so. If § 27-1-702, MCA creates an anomaly in the area of tort law, it is up to those interest groups who are adversely affected to bring it to the legislature’s attention and it is up to the legislature to change the law accordingly.
¶ 156 For these reasons, I concur in part and dissent in part from the majority decision.