No. 87-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

PHILLIP R. MORROW, d/b/a MORROW
MECHANICAL CONTRACTORS,

        Plaintiff and Appellant,

  -vs-

FBS INSURANCE MONTANA-HOINESS LABAR,
INC.,

        Defendants and Respondents.

---

APPEAL FROM: District Court of the Thirteenth Judicial District,
In and for the County of Yellowstone,
The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Holland & Hart; James M. Ragain, Billings, Montana

    For Respondent:

        Moulton, Bellingham, Longo & Mather; Gerald B. Murphy,
Billings, Montana

---

Submitted on Briefs: Nov. 6, 1987

Decided: February 9, 1988

Filed: FEB 9 - 1988

*Ethel M. Harrison*
_____
Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

The Thirteenth Judicial District Court granted the respondent's motion for summary judgment. The issue here is whether the lower court, in granting summary judgment, erred in finding that there were no material questions of fact. We reverse on this issue and remand the cause for trial.

Appellant Morrow, a subcontractor, alleged that respondent FBS Insurance Montana-Hoiness LaBar, Inc., (FBS), a construction bonding agent, intentionally interfered with Morrow's prospective economic advantage. The economic advantage allegedly jeopardized by FBS's conduct was the award of a subcontract offered by a general contractor, Fisher Construction, Inc., (Fisher), for work on the construction of a water plant. Morrow claims FBS used its influence as Fisher's bonding agent to prevent Fisher from accepting Morrow's subcontract bid.

Prior to bidding as the general contractor for construction of the water plant, Fisher solicited bids from several subcontractors for the mechanical portion of the facility. Morrow and Star Service, Inc., (Star), bid lower than the other mechanical subcontractors bidding the job.

After narrowing its selection to Morrow and Star, Fisher met with the two subcontractors to discuss ways to cut costs on the subcontract. Shortly after this meeting Fisher awarded the subcontract to Star.

Dan Fisher, head of Fisher Construction, stated in his deposition that Star received the contract because it bid lower than Morrow. Alf Hulteng, the Fisher employee in charge of analyzing the two bids, stated in his deposition that Morrow's bid may have been lower than Star's bid because

it included portions of the subcontract not covered by Star. Thus, the record fails to resolve which bid was initially lower. Morrow alleges that after the meeting to cut costs on the project, Star reduced its bid to match his bid.

The record also reveals a conflict as to a "back bonding" requirement for the mechanical subcontractor on the project. Deposition testimony by Fisher and FBS employees shows that FBS contemplated a performance bond from the major subcontractors back to the general contractor to guarantee that the subcontracting work stayed within the amount bid. The depositions also show that all the parties were aware that Morrow would have difficulty obtaining a back bond, and that FBS would not provide a back bond to Morrow. However, the record does not resolve when Fisher actually communicated to the subcontractors that a back bond would be required. Star eventually did obtain a bond to guarantee its subcontract work on the project, but the bond was executed in June, long after the award of the subcontract to Star, and the bond itself was back dated from the date of actual execution.

Morrow alleges that but for the conduct of FBS, he would have received the contract. To support this allegation, Morrow stated that Fisher employees Dan Fisher and Alf Hulteng told him that FBS pressure prevented Fisher from awarding him the subcontract. Morrow also points to the ambiguities concerning the back bonding requirement and the question of the low bid to discredit Fisher's explanation that Star received the subcontract because they bid lower than Morrow.

According to Philip Morrow's wife and business associate, Donna Morrow, FBS's apparent motive for allegedly pressuring Fisher was a "soured business relationship" between Morrow and FBS. Donna Morrow also stated in her

deposition that Alf Hulteng informed her that FBS employee Kip Vandeventer disliked the Morrows.

The soured business relationship between FBS and Morrow apparently resulted from a payment made by FBS as Morrow's bonding agent on another job. This payment apparently resulted in FBS's inability to back bond Morrow's work on the construction project at issue in this case. Deposition statements also showed that a bonding agent such as FBS could exert considerable pressure on a general contractor like Fisher.

In its decision to grant summary judgment on the intentional interference claim, the District Court found, "Mostly this case is plaintiff's words against defendants' words." Also in regard to words against words, the District Court found that "all the testimonial evidence other than that from plaintiff and his wife, deny plaintiff's version of the pertinent occurrences." With the above stated facts and findings in mind, we will proceed to analyze Morrow's objection to the lower court's grant of summary judgment.

## ISSUE

Whether the District Court properly found that no material facts existed, and that FBS was entitled to summary judgment as a matter of law.

According to this Court's interpretations of Rule 56(c), M.R.Civ.P., "[t]he party moving for summary judgment has the initial burden of showing that there is no genuine issue as to any fact deemed material in light of the substantive principles that entitled the movant to judgment as a matter of law." Fleming v. Fleming Farms, Inc. (Mont. 1986), 717 P.2d 1103, 1105-06, 43 St.Rep. 776, 779. And, all "reasonable inferences that may be drawn from the offered proof are to be drawn in favor of the party opposing summary

4

judgment." Cereck v. Albertson's Inc. (1981), 195 Mont. 409, 411, 637 P.2d 509, 511.

Morrow asserts that in applying this rule, the lower court ignored the material fact questions created by the conflicting affidavits and depositions of the parties. In support of this argument, Morrow cites § 26-1-301, MCA, which provides:

> One witness sufficient to prove a fact. The direct evidence of one witness who is entitled to full credit is sufficient for proof of any fact, except perjury and treason.

We agree with Morrow's argument.

Other Courts have emphasized the impropriety of granting summary judgment where the credibility of an affiant may be crucial to decision of a material fact. See Durant v. Stahlin (Mich. 1965), 135 N.W.2d 392, 398; Arnstein v. Porter (2d Cir. 1946), 154 F.2d 464, 469-70. In Arnstein, the material question of fact depended on contradictory allegations in the depositions of the parties. Arnstein, 154 F.2d at 469. In reviewing the lower court's grant of summary judgment, the Court stated:

> [W]here, as here, credibility, including that of the defendant, is crucial, summary judgment becomes improper and a trial indispensable. It will not do, in such a case, to say that, since the plaintiff, in the matter presented by his affidavits, has offered nothing which discredits the honesty of the defendant, the latter's deposition must be accepted as true. We think that Rule 56 was not designed thus to foreclose plaintiff's privilege of examining defendant at a trial, especially as to matters peculiarly within defendant's knowledge.

Arnstein, 154 F.2d at 471.

5

Drawing all reasonable inferences in favor of Morrow's offered proof, application of <u>Arnstein</u>'s interpretation of Rule 56 is appropriate here because the issues presented by the offered proof generally involve witness credibility. For example:

(1) Dan Fisher stated that Star received the subcontract because they were the low bidder. Philip Morrow stated that Dan Fisher told him Star received the subcontract because of pressure by FBS. Morrow's version of events is backed by Alf Hulteng's ambiguous statements as to who was the low bidder.

(2) Alf Hulteng stated that pressure from FBS did not influence Fisher's decision to select Star over Morrow. Morrow stated that Hulteng told him that Star received the contract because of pressure from FBS.

(3) Donna Morrow stated that a sour business relationship existed between the parties. Kip Vandeventer, the FBS employee working with Fisher at the time of the bids, denied the existence of animosity between the parties.

Drawing all reasonable inferences in favor of the statements made by the Morrows, we cannot say that there exists no question of material fact. The question presented by the contradictory statements goes to the heart of Morrow's claim, i.e., did FBS pressure Fisher into awarding the subcontract to Star? Dan Fisher's statement that Star was the low bidder conflicts with statements made by Alf Hulteng, the Fisher employee who actually analyzed the bids. Under these circumstances, FBS has failed to carry the movant's initial burden of showing the absence of material facts in light of the substantive principles that entitled the movant to judgment as a matter of law.

However, FBS argues that even if pressure existed, Morrow failed to produce evidence sufficient to show:

(1)     that FBS intended to harm Morrow by such pressure;

(2)     that the pressure was improper;

(3)     that but for the pressure Morrow would have received the contract.  FBS argues that Morrow must come forward with proof creating a material question of fact on these issues to maintain an action for intentional interference with prospective economic advantage.

The lower court set out the elements for the intentional interference with prospective economic advantage for this case as follows:

(1)     That FBS intentionally and willfully acted;

(2)     In a manner calculated to cause damage to plaintiff and plaintiff's business;

(3)     Which acts were done with the unlawful purpose of causing damage or loss to plaintiff without right or justification and;

(4)     From which acts plaintiff actually suffered damage or loss.  We agree with the lower court's analysis in this regard.  See Bolz v. Myers (1982), 200 Mont. 286, 295, 651 P.2d 606, 611.  However, drawing all reasonable inferences in favor of Morrow, Morrow's affidavits and deposition statements raise a material question of fact under the substantive principles of law involved.

First, as to whether or not FBS acted intentionally, Morrow stated that FBS put pressure on Fisher.  There is no evidence in the record to indicate that the alleged pressure was accidental.  Morrow's statement, and the statements allegedly made by Fisher employees as to why Star received the contract, are allegations which by their very nature implicate intentional conduct on the part of FBS.

Second, as to whether or not the interference was "improper" under Montana law, an inference may be drawn from Morrow's allegations that FBS pressured Fisher to award the

7

contract to Star to make sure that the subcontractor receiving the bid could be back bonded with FBS. We cannot say that interference motivated to gain business advantage among the relationships between bonding agents, general contractors, and subcontractors is necessarily proper. And when there is

> room for different views, the determination of whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel for the state of community mores and for the manner in which they would operate upon the facts in question.

Restatement (Second) of Torts § 767 at 38-39 (1977).

Finally, in regard to whether or not an inference could be drawn that the pressure caused damage to Morrow, we need only point out that Fisher narrowed its choice of subcontractors to Star and Morrow. The allegation made by Morrow is that but for FBS's improper pressure, he would have received the contract. Under these circumstances, an inference may certainly be drawn that Fisher's choice of Star over Morrow damaged Morrow.

For the foregoing reasons we overturn the lower court's grant of summary judgment and remand.

R. C. McDonough
Justice

We Concur:

J. A. Turnage
Chief Justice

John C. Sheehy

William E. Hunt

L. C. Gulbrandson
Justices

8