No. **91-206**

IN THE SUPREME COURT OF THE STATE OF MONTANA

**1991**

AGRICREDIT ACCEPTANCE CORPORATION,

Plaintiff and Respondent,

-vs-

OMAR MICHELS,

Defendant and Appellant.

FILED

SEP 24 1991

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Ninth Judicial District,
In and for the County of Glacier,
The Honorable R. D. McPhillips, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

David F. Stufft; Frisbee, Moore, Stufft & Olson, Cut
Bank, Montana

For Respondent:

Kevin C. Meek; Alexander, Baucus & Linnell, P.C.,
Great Falls, Montana

Submitted on Briefs: August **1, 1991**

Decided: September 24, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiff, Agricredit Acceptance Corporation (Agricredit), initiated this suit to recover a deficiency judgment from the defendant, Omar Michels, after the lawful repossession and subsequent sale of collateral in which Agricredit held security interests. Omar Michels appeals from a summary judgment of the District Court of the Ninth Judicial District, Glacier County, Montana, granting summary judgment in favor of Agricredit. We reverse.

The issue is whether the District Court erred in granting plaintiff's motion for summary judgment by ruling that Agricredit conducted a commercially reasonable sale when it sold two pieces of Michels' farm equipment.

1.

This case involves the sale of two pieces of farm equipment repossessed from Michels. Following repossession, Agricredit conducted separate sales and sold each piece of equipment applying the net sales proceeds to the balance due on Michels' accounts.

On June 27, 1986 Michels purchased a 1982 Massey-Ferguson Model 850 combine from Palmer Implement, Inc. Michels and Palmer Implement, Inc. entered into a retail installment contract and a security agreement for the sale of the combine. Palmer Implement, Inc. assigned this contract and security agreement to Massey-Ferguson Credit Corporation which in turn assigned the contract and security agreement to Agricredit.

2

The terms of the contract required Michels to make four annual payments of approximately $11,367, which he failed to do. In addition, the contract allowed Agricredit to accelerate the balance due on the contract or repossess the collateral in the event of default. Sometime after Michels defaulted, Agricredit lawfully repossessed the combine.

After failure to make the payments, on October 22, 1988 Michels was sent a notice of repossession and pending sale of the combine setting forth the balance due plus expenses of repossession. The notice specified that the combine would be sold at a public sale on November 8, 1988 at Munson Equipment in Shelby, Montana.

On November 3, 1988 Agricredit published a notice regarding the sale of the combine in the classified section of the Shelby Promoter, a weekly newspaper. This notice set forth the make and model of the combine; the date, time and place of the sale; and an out-of-state phone number for interested parties to make inquiries regarding the combine.

The net proceeds from the sale of the combine totalled $12,500 which was applied to Michels' past due account. On November 17, 1988 Agricredit notified Michels of the sale. This notice stated that $32,998.99 was the balance due on the contract, however, after deducting the $12,500, the total net proceeds of the sale, Michels owed Agricredit a deficiency in the amount $20,594.79.

Agricredit sought a second deficiency after a default and subsequent sale relating to a Versatile Model 850 four wheel drive

tractor purchased by Michels from Palmer Implement, Inc. under contract dated November **16, 1986.** This deficiency arose from Michels' default on the November **16, 1986** contract and security agreement. Michels had entered into this contract and security agreement with Palmer Implement, Inc. for the purchase of a tractor. As with the combine contract, Palmer Implement, Inc. assigned the contract and security agreement to Agricredit.

Michels agreed to pay the purchase price of **$33,000** for the tractor. Michels received $9,000 credit for a trade-in plus he paid $2,000 cash for a total down payment of **$11,000.** This contract required Michels to make yearly payments in the amount of **$9,203.70** beginning December 1, **1987** until the account was paid in full. In the event of default, Agricredit had the right to accelerate the remaining payments due or repossess the collateral. Michels defaulted on the tractor contract when he failed to make the December 1, **1987** payment. After notice published in the Shelby paper, notice to Michels and public sale, Agricredit sent Michels a notice stating that after deducting the net sales proceeds of **$16,000** from the balance due on the tractor account at the time Agricredit repossessed the tractor, Michels owed a **$10,508.70** deficiency to Agricredit.

When Michels failed to pay the deficiencies, Agricredit filed suit in the District Court against Michels for the deficiencies. On January 31, **1991,** the District Court granted summary judgment in favor of Agricredit. The District Court found that Agricredit was entitled to the deficiencies because it conducted commercially

4

reasonable sales when it sold the combine and tractor. The District Court found the sales to be commercially reasonable because Agricredit notified Michels of the pending sales pursuant to § 30-9-504(3), MCA.

Michels, in opposing summary judgment in this matter submitted to the trial court the affidavit of Sherwin Palmer, a former farm equipment dealer in Shelby. This affidavit stated the following:

SHERWIN PALMER, being first duly sworn upon his oath, deposes and says:

1. My name is Sherwin Palmer.

2. I am 62 years of age.

3. I was a Massey Ferguson dealer in the Cut Bank area from 1971 to 1987.

4. Massey Ferguson, through its credit agency, First Massey Ferguson Credit, and subsequently Agricredit Acceptance Corporation, has conducted and transacted business in Montana on a regular and systematic basis.

5. I know Mr. Elmer Fandrich. Fandrich was one of the Agricredit Acceptance Corporation collection men who would regularly come into the Cut Bank area and not only work on accounts with me, but would also travel through the Cut Bank/Glacier County area and confer with farmers who had accounts with Agricredit Acceptance Corporation. Fandrich would travel into my area approximately every two months at the minimum.

6. Prior to Fandrich being assigned this territory, the previous credit man would come to Cut Bank on a regular basis of not less than once a month. He met with me, talked with me and worked on accounts and attempted to encourage the sale of farm equipment through his company. These were not isolated instances. In addition, he would work the rural areas and talk to farmers about Agricredit loans.

7. I am also very familiar with the sale of farm equipment in northcentral Montana. Almost all farm equipment is sold by implement dealers in the farm publication commonly known as "The Prairie Star." It is

5

on very remote occasions that any farm equipment is ever sold by an implement dealer in [the] weekly newspapers commonly referred to as "The Cut Bank Pioneer Press" or "The Shelby Promoter" for the reason that farmers simply do not read these advertisements in looking for quality farm equipment.

8. I am very familiar with the **1982** Massey Ferguson **850** combine. This combine was sold by my business to Mr. Omar Michels. The combine was in excellent condition at the time Mr. Michels delivered the combine to Agricredit Acceptance Corporation. It had very few hours on it. In Fall **1988,** this combine had a book value of **$30,325.00.** In addition, the headers had individual values as follows: **24'** header - **$2,123.00; 13'** header - **$1,512.00.** Attached to my affidavit is the "Official Guide Tractors and Farm Equipment" published by the National Farm & Power Equipment Dealers Association for this combine.

9. It is my opinion based upon my experience as a Massey Ferguson implement dealer that this combine would have sold higher than simply the book value due to its excellent condition if it had been properly advertised. I know the person, Jim Edwards, who bought the combine at the repossession sale. This individual feels that he got a "steal." Since Mr. Edwards has purchased this machine, there has been very little work required as it was a quality, well-maintained machine at all times.

10. I am also familiar with the 1977 Versatile Series II 4 wheel drive tractor. I took this tractor in on trade and subsequently sold it to Mr. Michels. In **1988,** the tractor had a new engine and a new axle installed. In addition, the tractor had excellent tires at the time the tractor was delivered to Agricredit Acceptance Corporation. Once again, based upon my opinion knowing the condition of the tractor and the trade area, this tractor would have sold if properly advertised in the area of **$30,000.00.** [Signed by Sherwin Palmer; dated October 26, **1990.1**

The District Court found that Agricredit satisfied its obligation of conducting commercially reasonable sales of the combine and tractor.

We hold that the District Court erred in granting summary judgment in view of Mr. Palmer's affidavit set forth above, which

raised a genuine issue of material fact concerning whether the sales were commercially reasonable. The judgment of the District Court is reversed and the case remanded.

/s/ John Conway Harrison<br>Justice

We concur:

/s/ [signature]

/s/ Karla M. Gray

/s/ [signature]

/s/ [signature]

Justices

September 24, 1991

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


David F. Stufft
Frisbee, Moore, Stufft & Olson
P.O. Box 547
Cut Bank, MT  59427

Kevin C. Meek
Alexander, Baucus & Linnell
P.O. Box 2629
Great Falls. MT  59403

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
      Deputy