No. 93-375

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

IN THE MATTER OF THE ESTATE OF
RUSSELL MICHAEL, JR.,

      Claimant and Respondent,

MARK O'KEEFE, State Auditor and
Commissioner of Insurance of the
State of Montana,

      Petitioner and Appellant,

  -vs-

GLACIER GENERAL ASSURANCE COMPANY,
A MONTANA CORPORATION,

      Respondent.

FILED

MAR 2 2 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:  District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Jeffrey Sherlock, Judge presiding.


COUNSEL OF RECORD:

    For Appellant:

        Richard Larson, Patrick M. Driscoll; Chronister
Driscoll & Moreen, Helena, Montana

    For Claimant:

        Dane C. Schofield; Peterson & Schofield, Billings
Montana

        Robert E. Maclin, III; Gess, Mattingly & Atchison,
Lexington, Kentucky


Submitted on Briefs:  December 2, 1993

Decided:  March 22, 1994

Filed:

Justice Karla M. Gray delivered the Opinion of the Court.

Commissioner of Insurance Mark O'Keefe, Liquidator for Glacier General Assurance Company (Glacier General), appeals from the District Court's grant of summary judgment in favor of the Estate of Russell Michael, Jr. (the Estate). The court determined that the Estate's claim in the amount of $1,749,000, less a two percent deductible, was valid and assigned the claim Class 3 priority in the distribution of Glacier General's assets. We affirm.

The Estate's claim arises from a financial security bond issued by Glacier General in November of 1984. At that time, Earl Parks (Parks) contracted to purchase ninety-six thoroughbred horses from Russell Michael, Jr. (Michael). Parks paid $1,000 and executed a promissory note for the $1,749,000 balance. To secure the note, Michael retained a security interest in the horses and required Parks to obtain a financial security bond in the amount of $1,749,000. The bond issued by Glacier General required Michael to assign his security interest in the horses to Glacier General in the event that performance on the bond was required.

Parks failed to make the first installment payment to Michael later in November. Michael sent notice of default and acceleration to Parks. He also notified Glacier General of the default, requested performance under the terms of the bond, and indicated his expectation that Glacier General take possession of the horses or reimburse the costs of holding them. Neither Parks nor Glacier General responded.

2

In January of 1985, Michael filed a lawsuit in the Fayette Circuit Court for the Commonwealth of Kentucky against Parks and Glacier General. Parks did not appear and a default judgment was entered against him. Glacier General appeared and entered into an "Agreed Order" with Michael providing for the public auction of the horses that had not died or previously been sold privately by Michael. The auction was held on September 8 and 9, 1985.

On September 18, 1985, the Kentucky court filed an "opinion" determining that Michael was entitled to summary judgment against Glacier General. A subsequent "opinion" was filed on December 6, 1985, liquidating Michael's damages against Glacier General in the amount of $2,220,484.86. Of that amount, $1,749,000 represented Glacier General's liability on the bond; the remainder reflected Michael's expenses for the maintenance, upkeep and sale of the horses, less the sale proceeds. Judgment was entered in Michael's favor on December 6, 1985.

While Michael's litigation against Parks and Glacier General proceeded in Kentucky, Glacier General became financially insolvent. It filed a petition for liquidation on August 12, 1985, and the First Judicial District Court, Lewis and Clark County, subsequently entered an order of liquidation and appointed State Auditor and Commissioner of Insurance Andrea Bennett as Liquidator. In January of 1986, Michael submitted a proof of claim to the Liquidator in the amount of $2,220,484.86. The Liquidator denied the claim.

In April of 1990, by which time Michael had died, the Estate

filed a complaint with the referee appointed by the First Judicial District Court. It requested the referee to assign its claim Class 3 priority and order the Liquidator to proceed with payment. In April of 1991, the parties stipulated to reserve adjudication of the Estate's claim in excess of $1,749,000 because Glacier General had insufficient funds to distribute to claimants with priority below Class 3.

The Liquidator asserted nine affirmative defenses in its amended answer filed August 26, 1991. The defenses included allegations that enforcement of the sales agreement was unconscionable; that the claim should be assigned Class 4 priority as a general creditor's claim; and that the amount of the claim on the bond should be offset by the proceeds from the sale of the horses.

In October of 1991, the Estate moved for summary judgment. The Liquidator opposed the motion. The referee determined that the Liquidator had not adequately defended against the motion under Rule 56(e), M.R.Civ.P., but declined to grant summary judgment. The referee gave the Liquidator a "second chance" to establish the existence of a genuine issue of material fact. Following the Liquidator's filing of additional affidavits, supplemental briefing and a second hearing on the motion, the referee recommended that summary judgment be granted in the Estate's favor. The District Court adopted the recommendation and granted the Estate's motion for summary judgment on April 12, 1993.

Mark O'Keefe, successor to Andrea Bennett as Liquidator,

4

appeals from the grant of summary judgment in favor of the Estate. He asserts the existence of genuine issues of material fact affecting Glacier General's obligation to perform under the bond and challenges the classification and amount of the claim.

Did the District Court err in determining that no genuine issues of material fact existed regarding the enforceability of the sales agreement and financial security bond?

Our standard for reviewing a grant of summary judgment is the same as that used by the district court. Emery v. Federated Foods (Mont. 1993), 863 P.2d 426, 431, 50 St.Rep 1454, 1456. Summary judgment is appropriate when the pleadings, affidavits, depositions and other documents on file demonstrate that no genuine issues of fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P.

Once the party moving for summary judgment meets its burden of establishing that no genuine issues of material fact exist, the burden of proof shifts to the party opposing the motion to present substantial evidence raising an issue of material fact. Kelly v. Widner (1989), 236 Mont. 523, 526, 771 P.2d 142, 144. The opposing party must set forth specific facts, by affidavit or as otherwise provided by Montana law, showing the existence of genuine issues for trial; affidavits must be based on personal knowledge and set forth facts which would be admissible in evidence. Rule 56(e), M.R.Civ.P.

The Liquidator asserts that sworn statements by Ryan Mahan, a

5

licensed auctioneer in Kentucky, and John Hayden, Glacier General's president when the bond was issued, established issues of material fact regarding the enforceability of the sales agreement and bond. He argues that the court erred by weighing the credibility of Mahan and Hayden rather than resolving the purported factual disputes at trial, in contravention of Morrow v. FBS Ins. (1988), 230 Mont. 262, 749 P.2d 1073. We disagree.

In Morrow, conflicting allegations regarding issues of material fact were contained in the affidavits and depositions of the parties. The trial court conceded as much when it noted that the case was a question of the plaintiff's word versus the defendant's word. The court went on to resolve the conflicts in granting summary judgment. We reversed the court, stating that summary judgment is improper where an affiant's credibility may be crucial to the determination of a material fact. Morrow, 749 P.2d at 1075.

Morrow has no application here because the Mahan and Hayden materials did not create genuine issues of material fact regarding the enforceability of the sales agreement and bond. In his first affidavit, Mahan stated that the sales transaction was "highly irregular" because Parks paid only $1,000 as a down payment. The Liquidator relies on this statement as evidence that the underlying transaction was invalid, in an effort to preclude enforcement of the transaction via the bond. In his later deposition, however, Mahan testified that his characterization of "irregularity" was incorrect because he had not reviewed the sales agreement or

6

considered the financial guarantee bond as part of the transaction.

Focusing on the content of the affidavit and deposition, the court determined that the "irregularity" of the sales transaction had been eliminated as an issue by Mahan's repudiation of his earlier statement. Thus, the court did not evaluate Mahan's credibility but determined, pursuant to Rule 56(e), M.R.Civ.P., that his statements did not raise a genuine issue of material fact impugning the enforceability of the sales agreement via the bond.

In a similar vein, the Liquidator argues that enforcement of the sales agreement via the bond would be unconscionable because of a disparity between the market value of the horses and the contracted price. He relies on statements by Mahan as a basis for his unconscionability argument and again contends that the District Court impermissibly weighed Mahan's credibility to determine that no genuine issue had been raised.

Mahan stated in his first affidavit that the market value of the horses as of the date the sales agreement was executed was substantially less than the purchase price. However, the appraisal attached to his supplemental affidavit reflected only the market value of the horses in September of 1985; it did not include an estimate or appraisal of the market value of the horses at the time of the underlying sales transaction in November, 1984. Furthermore, Mahan's deposition states that the market value of horses generally declined significantly in the early part of 1985 from the "pinnacle" of thoroughbred horse prices reached in 1984; the inference is clear that the market value of the horses at the

7

time the sales agreement was executed was significantly higher than Mahan's appraised value as of September, 1985.

We agree with the court that the totality of Mahan's testimony considered in a light most favorable to the Liquidator fails to establish the existence of a genuine issue of fact relating to the value of the horses at the time the sales agreement was executed. More importantly, we conclude that a disparity between the horses' market value and the purchase price, even if properly raised as an issue, would not be material to the "conscionability" of enforcing the sales agreement. Oppression and a disparity of bargaining power are the indicia of unconscionability relating to a sales contract between two business professionals. All-States Leasing v. Top Hat Lounge (1982), 198 Mont. 1, 6-7, 649 P.2d 1250, 1253. Those indicia are totally lacking here.

The Liquidator also contends that Hayden's affidavit raises a factual dispute concerning Michael's representation of the horses' market value in his bond application. The thrust of this contention is that Michael misrepresented the market value in order to obtain the bond and, therefore, that enforcement of the bond itself would be unconscionable.

The court determined that none of the application materials for the bond purported to represent the horses' market value and that Hayden was not competent to testify as to that market value. Thus, the court did not assess Hayden's credibility but applied principles governing summary adjudication and determined that Hayden's sworn statements did not raise a material issue regarding

8

the conscionability of enforcing the bond.

The Liquidator also contends that a shift in the referee's position regarding payment of the bond reflects an impermissible resolution of a factual issue. In his first order, the referee characterized the evidence surrounding the transaction as "suspicious" based, in part, on the payment of the premium by a cashier's check remitted by an escrow company. The referee directed the Liquidator--in the Liquidator's effort to oppose summary judgment--to contact the escrow company to determine the source of the funds used to pay the premium. In his second order, the referee unequivocally stated that Parks paid the premium, a position adopted by the District Court.

The supplemental materials filed by the Liquidator neither indicate that the escrow company was contacted nor contain any facts showing that Parks did not pay the premium via the escrow company. Thus, the referee's change in position does not represent a factual determination, but again reflects the Liquidator's failure to advance evidence establishing the existence of a genuine issue of material fact for trial.

We conclude that the District Court did not resolve genuine issues of material fact; it properly applied the principles governing summary judgment set forth in Rule 56(e), M.R.Civ.P. We hold that the District Court did not err in determining that the Liquidator failed to raise genuine issues of material fact regarding the enforceability of the sales agreement or the financial guarantee bond.

9

Did the District Court err in assigning Class 3 priority to the Estate's claim?

Relying on the doctrine of merger, the Liquidator contends that the Estate's claim on the bond was extinguished by the entry of the Kentucky court's "opinion" on September 18, 1985. Under this approach, the Estate's claim would be solely on the Kentucky judgment, entitling it to Class 4 priority as a general creditor. While the Liquidator's attempt to escape the effect of the District Court's 1989 declaratory judgment that claims on Glacier General's bonds are entitled to Class 3 priority is understandable, his arguments are not persuasive on either the facts or the law before us.

At the outset, we note that the record establishes that the bond itself was the basis for the Estate's claim. In its "proof of claim" submitted to the Liquidator, the Estate supported its claim on the underlying transaction, attaching copies of the sales agreement, promissory note and bond. While the Estate also attached a copy of the ultimate Kentucky judgment, it relied on the judgment only as evidence to support its claim on the bond. Furthermore, the defenses asserted by the Liquidator were to the claim on the bond itself.

Nor is there merit to the Liquidator's argument that the Estate's claim is on the Kentucky judgment as a matter of law. The Liquidator correctly points out that this Court applied the merger doctrine in Neel v. First Fed. Sav. & Loan Assoc. (1984), 207 Mont. 376, 675 P.2d 96. There, we determined that when a contract claim

10

is reduced to judgment, the contract is surrendered and cancelled by merger in the judgment and ceases to exist. Neel, 675 P.2d at 101. The Liquidator asserts that the same doctrine is applicable to the Estate's claim on the bond. We disagree.

The Kentucky court's September 18, 1985, opinion did not cancel the claim on the bond. Caine & Weiner v. Barker (Wash. App. 1986), 713 P.2d 1133, relied on by the Liquidator to support application of the merger doctrine, actually supports the inapplicability of the doctrine here. It clarifies that the doctrine is available only where a final judgment has been entered for the payment of money. Caine & Weiner, 713 P.2d at 1134. The September 1985 opinion was not a judgment, much less a final judgment; nor did it award damages. Indeed, the opinion expressly anticipated the filing of a subsequent order. Thus, it does not support application of the merger doctrine.

Moreover, § 33-2-1365(4), MCA, precludes merger of the claim on the bond into the final judgment entered by the Kentucky court on December 6, 1985. Section 33-2-1365(4), MCA, provides in pertinent part:

> No judgment or order against . . . the insurer entered after the date of filing of a successful petition for liquidation . . . need be considered as evidence of liability or of quantum of damages.

Here, Glacier General's petition for liquidation was filed on August 12, 1985, and the order of liquidation entered on November 12, 1985. Because the December 6, 1985 judgment was filed after the liquidation order, it has no binding effect on either liability or damages under § 33-2-1365(4), MCA.

11

We recently addressed this statute's relationship to prior judgments in Claim of Kowalski (Mont. 1993), 860 P.2d 104, 50 St. Rep. 1038. There, the Liquidator attempted to rely on the res judicata effect of a post-liquidation consent judgment obtained by claimant Kowalski. We initially determined that the effect of such a prior judgment was governed primarily by the liquidation statutes, relying on § 1-1-108, MCA. Kowalski, 860 P.2d at 108. Pursuant to those statutes, we held that the prior judgment did not conclusively establish the amount of damages claimed. The only procedure by which claimant could establish that amount following the Liquidator's denial of her claim was to present proof of the claim to the referee. Kowalski, 860 P.2d at 109.

Here, as in Kowalski, the Estate must prove both liability and damages in order to establish its claim under the liquidation statutes. Because the Kentucky judgment had no conclusive effect, the only claim upon which the Estate could establish Glacier General's liability and quantum of damages is the claim on the bond. The Estate properly established its claim on the bond and, therefore, is entitled to Class 3 priority pursuant to the court's 1989 declaratory judgment. We hold that the District Court did not err in assigning Class 3 priority to the Estate's claim.

Did the District Court err in concluding that the proceeds from the sale of the horse collateral should be applied first to offset Michael's expenses in maintaining and selling the horses rather than to reduce the Estate's claim under the bond?

12

According to the District Court, Glacier General's failure to perform under the bond caused Michael to suffer losses in two categories. It determined that the expenses incurred by Michael in maintaining and selling the horses represented a loss separate from, and in addition to, the unpaid debt secured by the bond. The court then determined that the sales proceeds would not cover the maintenance and sales expenses and, as a result, that no proceeds would remain to apply to the loss under the bond. On that basis, the court refused to apply § 33-2-1371(3), MCA, to reduce the amount of the Estate's Class 3 claim on the bond.

The Liquidator advances two arguments challenging the court's determination that the sales proceeds should be first applied to maintenance and sales expenses. First, he argues that the court improperly circumvented § 33-2-1371(3), MCA, by dividing Michael's losses into two categories. We disagree.

Section 33-2-1371(3), MCA, provides that any portion of a loss under a "policy" which is recovered by the claimant from other sources cannot be included in a Class 3 claim. This statute pertains only to Michael's loss under the bond itself, which the District Court previously has declared to be a "policy" of insurance. The expenses incurred in maintaining and selling the horses are, as the court determined, a separate loss. Thus, only the portion of the sales proceeds, if any, which exceeds the maintenance and sales expenses would constitute a recovery of the Estate's loss under the bond; only that portion would be subject to exclusion under § 33-2-1371(3), MCA.

13

While the amount of the expenses incurred and sales proceeds received has not yet been litigated because Glacier General's assets are insufficient to distribute to claims with priority lower than Class 3, the record suggests that the incurred expenses significantly exceed the sales proceeds. The Liquidator does not argue otherwise. Thus, no portion of the sales proceeds represents a recovery of the Estate's loss under the bond pursuant to § 33-2-1371(3), MCA.

Next, the Liquidator argues that the District Court improperly placed the obligation of the horses' care on Glacier General. Under the terms of the sales agreement, possession of the horses did not transfer until the first installment was paid. Because Parks defaulted on the initial payment, the Liquidator asserts that Parks acquired neither possession of the horses nor the obligation for their care. On that basis, he contends that Glacier General had no corresponding obligation as surety on the bond.

This argument is without merit. Glacier General's liability for the maintenance and sales expenses is derived from its failure to perform its obligations under the bond, namely, payment of the remaining $1,749,000 purchase price and acceptance of the assignment of the horse collateral. Had Glacier General performed when requested by Michael, the expenses would not have been incurred. The fact that Parks had not yet acquired the obligation to care for the horses under the sales contract does not effect Glacier General's liability for those expenses under the terms of its bond.

14

The Liquidator advances one additional argument that we address here, although it is only tangentially related to the application of the sales proceeds. He asserts that Michael failed to give notice of the private sales of some of the horses which preceded the public auction. On that basis, he argues that an issue of material fact exists regarding the commercial reasonableness of the private sales, precluding summary judgment under Agricredit Acceptance Corp. v. Michels (1991), 250 Mont. 23, 817 P.2d 704.

Section 30-9-504(3), MCA, entitles a secured creditor to dispose of collateral so long as every aspect of the disposition is commercially reasonable. It specifically requires the secured party to give the debtor reasonable notice of the time after which any private sale is to be made unless the collateral is perishable or threatens to decline speedily in value.

As the party moving for summary judgment, the Estate was required to show the absence of genuine issues of material fact regarding the reasonableness of the private sales of the horses. To that end, it submitted the affidavit of Don S. Sturgill, an expert in the thoroughbred horse industry. In his affidavit, Sturgill testified that the private sale of horses often resulted in higher prices than sale by public auction, establishing the commercial reasonableness of that manner of sale. He also indicated that the prices of thoroughbred horses dropped dramatically in 1985, establishing the inapplicability of the notice requirement of § 30-9-504(3), MCA, to private sales where

15

the value of the collateral is declining speedily. Thus, the Estate met its initial summary judgment burden.

The Liquidator's bare assertion that notice was not given does not raise a genuine issue of material fact as to the necessity of notice on the record before us. Unlike the debtor in Agricredit Acceptance Corp., the Liquidator failed to advance any evidence that placed the commercial reasonableness of the private sales at issue.

We conclude that the District Court correctly determined that the proceeds from the sale of the horses should be applied first to offset the expenses incurred by Michael in maintaining and selling the horses. The Liquidator has not asserted error in the court's determination that the sales proceeds would not be sufficient to cover these expenses. Thus, we hold that the court properly declined to apply any portion of the sales proceeds to reduce the Estate's Class 3 claim on the financial guarantee bond.

Affirmed.

/s/ Karla M. Gray
Justice

We concur:

/s/ J. A. Turnage
Chief Justice

/s/ John Conway Harrison

/s/ Terry Trieweiler

/s/ [signature]
Justices

16

March 22, 1994

## CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:

Patrick M. Driscoll
Richard Larson
CHRONISTER, DRISCOLL & MOREEN
34 West Sixth Ave., Suite 2E
Helena, MT 59601

Dane C. Schofield
PETERSON & SCHOFIELD
2906 Third Ave. North
Billings, MT 59101

Robert E. Maclin, III
GESS, MATTINGLY & ATCHISON, PSC
201 West Short Street
Lexington, Kentucky 40507

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
    Deputy