JUSTICE LEAPHART,
dissenting in part and concurring in part.
¶124 I dissent on issue number three — the grant of partial summary judgment to MRL regarding whether the train crew gave an adequate auditory warning.
¶125 Citing Morrow v. FBS Ins. Montana-Hoiness Labor (1988), 230 Mont. 262, 749 P.2d 1073, the Court reasons that when credibility is crucial, summary judgment is inappropriate. In Morrow, the plaintiff claimed that FBS, a construction bonding agent, used its influence to prevent Fisher, a general contractor, from accepting Morrow’s bid. Fisher argued that it denied Morrow’s bid because another subcontractor, Star, made a lower bid than the other subcontractors, including Morrow. However, the Court in Morrow concluded that there was conflicting testimony regarding Fisher’s reasons for accepting Star’s bid and that “[t]he question presented by the contradictory statements goes to the heart of Morrow’s claim, i.e., did FBS pressure Fisher into awarding the subcontract to Star?” Morrow, 230 Mont. at 266,749 P.2d at 1075. Further, the Court determined that the “issues presented by the offered proof generally involve witness credibility.” Morrow, 230 Mont. at 266, 749 P.2d at 1075.
¶126 Morrow relied on two decisions, Durant v. Stahlin (Mich. 1965), 135 N.W.2d 392, and Arnstein v. Porter (2nd Cir. 1946), 154 F.2d 464, for the proposition that summary judgment is improper “where the credibility of an affiant may be crucial to decision of a material fact.” Morrow, 230 Mont. at 265, 749 P.2d at 1075. The reliance of the Court both in Morrow and in the present case on Durant is misplaced. First, the Durant court affirmed the trial court’s grant of summary judgment, determining that there was “no issue of fact.” Durant, 135 N.W.2d at 395. Second, the Court in Morrow cited not to the majority opinion in Durant but rather to a concurring opinion that opined that “when resolution of a disputed fact, presented by conflicting affidavits or other proofs, depends upon the credibility of an affiant or witness, the trial judge engaged in an inquiry on motion for summary judgment must not usurp a trial jury’s right ... to determine the affiant’s credibility.” Durant, 135 N.W.2d at 398 (Souris, J. concurring). In Arnstein, the court reviewed a grant of summary judgment on a claim of copyright infringement. The trial court had depositions by the plaintiff and the defendant concerning whether the defendant had access to plaintiff’s musical compositions. The trial court concluded that plaintiff’s account was “fantastic” and not credible. *379 Arnstein, 154 F.2d at 469. The Arnstein court concluded that on the critical question of access, plaintiffs credibility, even as to the improbable parts of his account, was for the jury to decide. The court in Arnstein reasoned that if the jury disbelieves the defendant, the jury could infer that the defendant had access to the plaintiffs compositions and that “[i]t follows that, as credibility is unavoidably involved, a genuine issue of material fact presents itself.” Arnstein, 154 F.2d at 469. Thus, in Arnstein and Morrow, there was conflicting evidence on material questions of fact. Compare Miller v. Herbert (1995), 272 Mont. 132, 138, 900 P.2d 273, 276 (rejecting plaintiffs reliance on Morrow and concluding in Morrow that “the record contained specific statements of fact contradicted by specific statements of fact of other witnesses”).
¶127 Finally, the Court cites three decisions for the proposition that credibility determinations about train whistle blowing are not appropriate for summary judgment. See Easterwood v. CSX Transp., Inc. (11th Cir. 1991), 933 F.2d 1548, 1560, n.14; Borden v. CSX Transp., Inc. (D. Ala. N.D. 1993), 843 F.Supp. 1410, 1418; and Bowman v. Norfolk Southern Ry. Co. (D. S.C. 1993), 832 F.Supp. 1014. In each one of these decisions, much like Arnstein and Morrow, there again was conflicting testimony on material questions of fact, that is, questions as to whether auditory warnings were given. For example, in Bowman, both parties moved for summary judgment on the plaintiff’s claim for failure to sound the warning signals as required by law. The court denied plaintiff’s motion because there was evidence that the bell was ringing continuously from the start of the train’s trip that morning. Bowman, 832 F.Supp. at 1021. Similarly, defendant’s motion for summary judgment on this issue was denied because a jury could conclude that the bell was in fact not operating at the time of the accident. “Whether the appropriate signal was given in this case is disputed and is, therefore, a question for the jury.” Bowman, 832 F.2d at 1021. In denying summary judgment, the court was not relying upon lack of credibility as to an extraneous issue of fact. Rather it found that there was a dispute as to the material fact at issue in the motion; in other words, was the bell sounded. This is in contrast to the present case where the Mickelsons appear to have offered no evidence to controvert the crew’s testimony that it gave a proper warning at the time of the accident.
¶128 The Court cites the principle, under § 26-1-303(3), MCA, that a witness false in one part of his or her testimony may be distrusted in *380 others. The Court then notes that there were inconsistencies between the crew’s testimony and Mickelson’s deposition testimony regarding whether he turned around on Momont Road before he reloaded the truck and from this concludes that the jury should therefore be allowed to disbelieve the crew’s testimony as to whether the whistle and bell were sounded. In doing so, the Court abandons the criterion of materiality. The sole issue before the Court on MRL’s motion for partial summary judgment was whether the auditory warnings were given. There was no dispute in the evidence on that material fact.
¶129 The conflicting evidence regarding whether Mickelson filled the firetruck’s water tank before or after he turned around on Momont Road is not probative of whether the train crew gave adequate warning of its approach. Assuming that the crew’s version of the turn around was not credible, it does not raise a dispute as to a fact material to the issue of whether the whistle and bell were sounded. Moreover, neither Mickelson nor the Court has suggested any reason why the train crew might lie regarding when Mickelson filled the firetruck’s water tank. As MRL did not deny having seen Mickelson’s vehicle approaching the track, what he did prior to that juncture is irrelevant to the question of whether the crew sounded the whistle.
¶130 In Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 211 (emphasis added) (citation omitted), the Court concluded:
substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.
¶131 The Court’s holding could substantially diminish the burden of nonmoving parties in summary judgment proceedings. For a nonmoving party to defeat a motion for summary judgment when it offers no evidence on a material question of fact, that party would apparently need only to present evidence raising doubt about the credibility of a moving party’s witness on a nonmaterial question of fact. For example, assume that a plaintiff injured in an intersection collision moves for summary judgment on liability and presents an uncontroverted affidavit that the defendant was speeding and did not have the right of way. Under the Court’s approach in the present case, the defendant could avoid summary judgment by arguing that plain *381 tiff was inconsistent in his testimony as to whether another vehicle went through the intersection ahead of defendant’s. Thus, despite the fact that the existence of a third vehicle is totally immaterial to the question of defendant’s liability, summary judgment would be properly denied because the defendant raised an issue as to the plaintiffs credibility on an extraneous fact.
¶132 Since there was no dispute as to the material fact at issue (whether, in the present case, the whistle and bell were sounded), I would affirm the District Court’s grant of partial summary judgment.
¶ 133 I specially concur as to issue number five — did the court err in granting summary judgment on the question of whether the train was “plainly visible.” The Mickelsons, relying on Herold v. Burlington Northern, Inc. (8th Cir. 1985), 761 F.2d 1241, contended that they should have been allowed to show that MRL was liable to the Mickelsons for not having equipped the train with a configuration of lights that would have been more effective than the configuration that the train in fact had. The MRL train in question had a headlight consisting of two 200,000 candela white lights and, in addition to what the law requires, a single blinking yellow light located directly behind the headlight. In particular, the Mickelsons sought to present evidence that a configuration with two yellow (amber) lights would have been more effective.
¶ 134 The Court rejects the Mickelsons’ interpretation ofHerold and holds, correctly so, that Herold merely requires that such equipment be properly maintained, not that it be effective. Having so held, the Court goes on to hold that, if MRL met all of its federally imposed lighting obligations, evidence of other more effective configurations is not admissible for purposes of establishing railroad liability. However, since the MRL contended that Mickelson was contributorily negligent under § 61-8-347, MCA, for having not seen a “plainly visible” train, the Court concludes that the Mickelsons should have been allowed to rebut that contention. The Court states:
While we disagree with the Mickelsons that alternative placement of the lighting has any relevance to whether the train was “plainly visible” to Jim on the night of the accident, we do agree that since MRL was permitted to allege and represent to the jury that its train was “plainly visible,” in part because of its yellow blinking light, thereby triggering Jim’s alleged duty to stop for the train, the Mickelsons were entitled to rebut and contradict MRL’s position by *382 showing that the single yellow blinking light located behind the locomotive’s headlight was ineffective as a warning light.
On remand, the jury should be instructed that while it may not consider MRL’s failure to equip its train with a particular lighting configuration as evidence of MRL’s negligence or culpability, it may nonetheless consider such evidence in determining whether the plaintiff was comparatively negligent for failing to see a train which MRL contends was “plainly visible.”
Accordingly, we hold that the District Court did not err in precluding the Mickelsons from presenting evidence to show that MRL was liable for failing to equip its train with a particular lighting configuration. However, we also hold that the District Court did err in precluding the Mickelsons from presenting evidence to refute MRL’s contention that Jim was comparatively negligent in failing to see the train which MRL contends was “plainly visible.” [Emphasis added.]
¶135 It is unclear to me whether the Court, in allowing the Mickelsons to rebut with “such evidence,” is saying that the Mickelsons can rebut with evidence of the ineffectiveness of the configuration in question, or whether our decision allows the Mickelsons to go further and present evidence as to what other configurations would have been more effective than the one used. I concur with the proposition that the Mickelsons be allowed an opportunity to rebut the testimony as to the “visibility” of the configuration used on the train in question. This can be accomplished through testimony from witnesses, either expert or lay, that the yellow light configured with the two white lights was not plainly visible. I do not agree that they should be able to rebut the visibility question with evidence of other alternative configurations that might have been more effective. The only configuration at issue is the one on the train in question in July of 1991. As the Court concedes, evidence of other configurations is not relevant as to whether the configuration at issue was plainly visible to Jim on the night in question. Furthermore, if the Mickelsons are allowed to present evidence of other configurations, the jury would assume, since such evidence has nothing to do with rebutting Jim’s alleged comparative negligence, that it relates to the question of liability. In other words, in oblique fashion, we would be allowing the Mickelsons to circumvent the court’s ruling in Herold and suggest to *383 the jury that MRL is liable for not having equipped the train with a different lighting configuration than it did.
¶ 136 In conclusion, I concur with the holding that the Herold case does not stand for the proposition that when a railroad equips a train with extra equipment beyond that required by law, it must assure that that equipment is not only maintained, but effective. I concur that the Mickelsons can rebut the “visibility” issue with evidence that the lighting configuration on this train was not “plainly visible.” In doing so, however, they may not present evidence of other configurations that might have been more effective.